

100 S Fourth Street, Suite 600 | St. Louis, MO 63102 | TEL 314.256.2550 | FAX 314.256.2549

April 4, 2025

DIRECT DIAL 314.571.4979 | keith.grady@tuckerellis.com

**VIA ECF**

Honorable Arun Subramanian
United States District Court
Southern District of New York
500 Pear Street, Courtroom 15A
New York, NY 10007

*Re: Liquid Rarity Exchange, LLC v. Ozone Networks, Inc. d/b/a OpenSea*
*Cause No. 24-cv-07651-AS*

Dear Judge Subramanian:

Pursuant to section 8(A) of the Court's Individual Practices In Civil Cases and paragraph 5 of the Patent Addendum to the Case Management Plan entered by the Court, Plaintiff Liquid Rarity Exchange, LLC ("LRE") respectfully submits this unopposed Letter Motion seeking leave to amend its initial Infringement Contentions to add a an inadvertently omitted claim chart for dependent claim 6 of U.S. Patent No. 10,825,090 ("the '090 patent"). LRE's initial Claim Chart, which inadvertently omitted claim 6, is enclosed as Exhibit 1, and the proposed Supplemental Claim Chart for Claim 6 is enclosed as Exhibit 2.

On February 14, 2025, LRE served its initial Infringement Contentions on Defendant Ozone Networks, Inc. d/b/a OpenSea ("OpenSea"). Although these Contentions explicitly referred to dependent claim 6, and detailed infringement allegations pertaining to claim 6 were previously set forth in the Amended Complaint at paragraphs 63–66 and in Exhibit F thereto, the corresponding claim chart for claim 6 was inadvertently omitted from the original submission. (See Exhibit 1.)

Upon discovery of this oversight, LRE promptly notified counsel for OpenSea and provided a Supplemental Claim Chart that added only the previously omitted claim 6. (See Exhibit 2.) The Supplemental Claim chart does not introduce new Accused Instrumentalities or assert new infringement theories, and it is consistent with LRE's previously disclosed infringement allegations.

OpenSea's Invalidity Contentions already include detailed assertions addressing the purported invalidity of claim 6, indicating that OpenSea has been fully aware of LRE's contentions regarding claim 6 and, therefore, will not suffer any prejudice from the requested amendment. The

amendment will neither delay these proceedings nor adversely impact the existing schedule established by the Court.

Counsel for OpenSea does not oppose Plaintiff's proposed amendment.

Accordingly, LRE respectfully requests that the Court grant leave to amend its Infringement Contentions to formally include the Supplemental Claim Chart for dependent claim 6.

We thank the Court for its consideration of this unopposed request.

Sincerely,

TUCKER ELLIS LLP

Keith J. Grady
Partner

KJG:brl

GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 51.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: April 7, 2025

# EXHIBIT 1
## Claim Chart

Comparison of OpenSea Website to Claims 1–7, 11, 14–16 of U.S. Patent No. 10,825,090

| **CLAIM 1** | |
|---|---|
| Claim Language | OpenSea Website Comparison |
| A virtual merchandising mart comprising a simulated trading center | The OpenSea website is a virtual merchandising mart designed for the purpose of serving as a simulated trading center as described on the website. |
| wherein a virtual three-dimensional depiction | The OpenSea website displays three-dimensional depictions of assets. A three-dimensional depiction is one that seems to have length, width, and depth. Examples of such depictions of assets on the OpenSea website include: Singularity by Hideki Tsukamoto , Dragon Street by Yu Cai, and ASM Gen II Brains. *See* Ex. F – Sample 3D NFT collections. |
| of one or more rarity assets | The assets listed on the OpenSea website are all rarity assets in that each one is unique. (A non-fungible token is a unique digital identifier that is recorded on a blockchain and is used to certify ownership and authenticity). |
| included in a raritymine | A raritymine is defined in the patent as an asset or pool of assets. The assets listed on the OpenSea website are included in pools of assets. |
| are configured for visualization by sellers and buyers | The assets are configured for visualization by sellers and buyers as can be seen by viewing the website. |
| of raritybits | Raritybits is defined by the patent as ownership units for rarity assets in the form of stocks, bonds,percentages, or any other appropriate unit of ownership. The OpenSea website allows for the purchase of shares in NFT collections in that it allows for purchase of one or more tokens of a collection. |
| in the raritymine | The rarity mine would in this instance be the NFT collection. NFTs on OpenSea are grouped into “collections,” effectively forming the raritymine (*See* Ex. H – rarity rank within a collection) |

| **CLAIM 2** | |
|---|---|
| Claim Language | OpenSea Website Comparison |
| The virtual merchandising mart of claim 1 further comprising one or more Internet showcases wherein an owner of a raritybit can virtually display a three-dimensional image of the one or more rarity assets for which the raritybit represents an ownership interest. | On the OpenSea website, owners of NFTs (“raritybits”) can virtually display their assets, including 3D assets, in a personal “showcase” section or user profile. OpenSea allows users to: Feature or highlight selected NFTs in a custom “shelf” or “featured tab.” Users can share these assets publicly in their profile, effectively creating an “Internet showcase” of three-dimensional images of each NFT (i.e., the rarity asset). |

| **CLAIM 3** | |
|---|---|
| Claim Language | OpenSea Website Comparison |
| The virtual online merchandising mart of claim 2 wherein the one or more Internet showcases are configured to be customizable by the owner of the raritybit to facilitate its presentation. | OpenSea’s “showcase” feature (or “Featured Items” shelf) is customizable by the NFT owner. Users can choose which items to feature, how they appear, and how they are grouped and reorder or curate the displayed assets. *See* Ex. N, describing the ability to reorder items and control how they are displayed in a “Featured Items” shelf. This satisfies claim 3 which provides that the showcases are “configured to be customizable by the owner” to facilitate each NFT’s presentation. |

| **CLAIM 4** | |
|---|---|
| Claim Language | OpenSea Website Comparison |
| The virtual online merchandising mart of claim 1 wherein the mart is connected to a controller with the capacity to configure the mart based on one or more of optimization of buyer-seller traffic, scale, type of asset, rarity value, rarity size, asset popularity, asset demand, information complexity, historical references, search engine, number of fractional share buyers, or analytics. | OpenSea's platform dynamically configures how NFTs are displayed and sorted. It uses analytics and popularity indicators to organize assets. Examples include: "Trending" and "Top" categories (reflecting asset popularity/demand). *See* Ex. O; *See also* Ex. G for categories like "Trending in 3D PFPs," and Ex. P and Ex. Q showing analytics dashboards. The platform sorts items by popularity, views, buyer demand, etc., effectively "optimizing" how NFTs are displayed for buyers and sellers. OpenSea has search filters by rarity attributes, type of asset, sale volume, etc. User traffic data and analytics also influence how collections or NFTs are surfaced or recommended. This meets the limitation of a "controller" that configures the mart based on parameters such as buyer-seller traffic, rarity value, popularity, analytics, etc. |

| **CLAIM 5** | |
|---|---|
| Claim Language | OpenSea Website Comparison |
| The virtual merchandising mart of claim 1 wherein the virtual three-dimensional depiction further comprises a holographic image. | Certain NFTs on OpenSea feature holographic-imagery. By way of example, "Winds of Yawanawa," "Alpha Gate," "Armin's All-Access," "G3" include holographic images. *See* Ex. F. |

| **CLAIM 7** | |
|---|---|
| Claim Language | OpenSea Website Comparison |
| The virtual merchandising mart of claim 1 wherein the virtual three-dimensional depiction further comprises action-oriented depictions of one or more of the rarity assets. | On OpenSea, various NFT listings are "action-oriented," featuring animated 3D visuals. Examples include rotating or dynamic graphics. See, e.g., "Imaginary Rides," "Helix," "G3," or "Winds of Yawanawa," etc., as noted in Exhibit F. These movement-based 3D depictions constitute "action-oriented depictions" of the rarity assets as required by claim 7. |

| **CLAIM 11** | |
|---|---|
| Claim Language | OpenSea Website Comparison |
| The virtual merchandising mart of claim 1 further comprising a robo-rarity trading support system comprising a smart data compiler configured to data stream information for use by the sellers and buyers of raritybits in the raritymine to facilitate operations of the virtual merchandising mart. | OpenSea provides real-time data and analytics for users to inform trading decisions, including: Floor prices, sales volume, rarity rankings, trending data, whale activity, etc. (*See e.g.*, Ex. R for OpenSea Pro data pages showing real-time statistics). OpenSea also provides market statistics and price histories for each collection. This aggregated, streamed information operates akin to a "robo-rarity trading support system" with a "smart data compiler" that compiles data for sellers and buyers, thus facilitating "operations of the virtual merchandising mart." |

| **CLAIM 14** | |
|---|---|
| Claim Language | OpenSea Website Comparison |
| The virtual merchandising mart of claim 1 further comprising a rarities trading exchange toolkit comprising a software control system configured to authenticate the one or more rarity assets shown in the virtual three-dimensional depiction. | OpenSea uses a “copymint prevention system” to authenticate NFTs. This system employs:<br>• Computer-vision technology to detect duplicate or plagiarized NFTs.<br>• Verification badges to distinguish authentic collections.<br>*See* Ex. S. By confirming authenticity through this software system, OpenSea meets claim 14’s requirement of “authenticat[ing] the one or more rarity assets shown in the virtual three-dimensional depiction.” |

| **CLAIM 15** | |
|---|---|
| Claim Language | OpenSea Website Comparison |
| The virtual merchandising mart of claim 1 further comprising a rarities trading exchange toolkit comprising a software control system configured to one or more of tagging, tracking, or securing rarity assets depicted in the online merchandise convergence. | 1. *Virtual Merchandising Mart and Online Merchandise Convergence* - Claim 15 depends from claim 1, which describes a “virtual merchandising mart.” The ‘090 specification also refers to this as part of the broader “online merchandise convergence.” In OpenSea, the entire NFT marketplace environment—including listings, user profiles, search features, and showcases—serves as this online merchandise convergence, where digital (and sometimes 3D) assets (“rarity assets”) are bought, sold, and displayed. (*See* Ex. F, examples of 3D asset listings.)<br><br>2. *Rarities Trading Exchange Toolkit* - OpenSea provides a set of exchange features—i.e., a “toolkit”—allowing users to list, trade, and manage their NFTs. These features include tools for verifying authenticity, labeling items, showing transaction history, and more.<br><br>3. *Software Control System Configured to Tag, Track, or Secure* - OpenSea uses various mechanisms to tag and verify NFTs (e.g., verification badges for collections/users). (*See* Ex. T, discussing verified accounts and badges.) All NFTs on OpenSea are tracked via unique token IDs on the Ethereum blockchain (or other blockchains) with publicly viewable transaction histories, providing robust traceability of ownership. *See* Ex. V – OpenSea Authenticity and provenance. The blockchain infrastructure and OpenSea’s listing protocols secure these rarity assets by preventing unauthorized duplication or tampering. OpenSea’s Copymint prevention system further ensures authenticity by flagging duplicated artwork. (*See* Ex. S, describing OpenSea’s computer-vision tech for authentication.)<br><br>4. *Depiction in the Online Merchandise Convergence* - All NFTs (the “rarity assets”) appear within the broader OpenSea interface (the “online merchandise convergence”), where they are visually depicted (often in 3D) for potential buyers and sellers on the "Virtual Merchandising Mart." (*See* Ex. F, sample 3D collections).<br><br>Taken together, these elements confirm that OpenSea meets each requirement of Claim 15 by providing a “rarities trading exchange toolkit” (its trading and verification systems) that includes a “software control system” for tagging, tracking, and securing rarity assets within an “online merchandise convergence.” |

| **CLAIM 16** | |
|---|---|
| Claim Language | OpenSea Website Comparison |
| The virtual merchandising mart of claim 4 wherein the controller has the capacity to configure the mart based on optimization of buyer-seller traffic. | As noted for claim 4, OpenSea uses dynamic sorting and filtering based on buyer-seller traffic metrics (e.g., “views,” “favorites,” “floor price,” “volume”). *See* Ex. U showing functionality to sort listings by views, which reflects traffic optimization. These optimizations allow both the platform and its users to reorganize or filter listings, thereby configuring the mart to optimize for buyer-seller traffic. This meets claim 16’s requirement that the controller has capacity for traffic optimization. |


EXHIBIT LIST:

Ex. F: Examples of 3D NFT collections (e.g., "Winds of Yawanawa," "Alpha Gate").
Ex. G: Trending in 3D PFPs
Ex. H: Rarity rank for assets in a collection.
Ex. M: Instructions/screenshots on creating featured item shelves.
Ex. N: Documentation on customizing an NFT showcase.
Ex. O: Categories like "Trending" or "Top" for buyer-seller traffic.
Ex. P/Q: Analytics dashboards (volume, sale data, user activity).
Ex. R: OpenSea Pro data streaming info (floor price, whale tracking, etc.).
Ex. S: Copymint prevention/verification technology details.
Ex. T: Verified accounts, badge system, or secure tracking references.
Ex. U: Sorting by views or popularity to optimize traffic.
Ex. V: What are redeemable NFTs and Authenticity and provenance

# EXHIBIT 2

## Supplemental Claim Chart

| **Claim 6** | |
|---|---|
| Claim Language | OpenSea Website Comparison |
| The virtual merchandising mart of claim 1 wherein the virtual three-dimensional depiction further comprises one or more of action, sound, smell, taste, touch or a combination of two or more of these or other sensory depictions. | OpenSea has depictions which animate, move, and/or revolve the three-dimensional rarity assets. *See e.g.*, Ex. F (Winds of Yawanawa, Alpha Gate, anotherblock, Armin's All-Access, Courtyard.io, G3, Gala Music Collectibles, Helix, Honey Comb, Imaginary Rides, Infinigods - InfiniPass, KIP Genesis Pass, Nexus Nodes, October London, ric flair drip by offset & metro boomin, RTFKT x Rimowa Meta-Artisian Forging Collection, Shilly: The Band Pass, Snoop Dogg - B.O.D.R, this is why i'm hot – MIMS, Wilder Wheels).<br>Furthermore, OpenSea also has depictions of three-dimensional rarity assets with accompanying audio (e.g., music or other sound recordings). Some examples include: Alpha Gate, anotherblock, Armin's All-Access, Gala Music Collectibles, Helix, Imaginary Rides, October London, ric flair drip by offset & metro boomin, RTFKT x Rimowa Meta-Artisian Forging Collection, Shilly: The Band Pass, Snoop Dogg - B.O.D.R, this is why i'm hot – MIMS, Wilder Wheels. *Id*.<br>These multi-sensory, dynamic presentations meet the claim 6 requirement of providing action, sound, or other sensory depictions in a virtual three-dimensional environment, thereby infringing the patent by integrating the exact sensory elements described—movement and sound—into the assets' display. *See* Amended Complaint, ECF No. 42, ¶¶ 63-66. |